# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| WALLACE STILZ, III, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 1:11-cv-05631 Judge Ruben Castillo |
| META FINANCIAL GROUP, INC., | ) ) | |
| Defendant. | ) | |

---

## DEFENDANT META FINANCIAL GROUP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

Derek W. Edwards (TN BPR No. 012455)
(Admitted *Pro Hac Vice*)
WALLER LANSDEN DORTCH & DAVIS, LLP
Nashville City Center
511 Union Street, Suite 2700
Post Office Box 198966
Nashville, Tennessee  37219-8966
Telephone:     (615) 244-6380
Facsimile:     (615) 244-6804
Email:          derek.edwards@wallerlaw.com

Dean S. Rauchwerger, Esq.
Michael S. Errera, Esq.
Clausen Miller P.C.
10 South LaSalle Street
Suite 1600
Chicago, Illinois  60603
Telephone:     (312) 855-1010
Email:          drauchwerger@clausen.com
                merrera@clausen.com

*Attorneys for Meta Financial Group, Inc.*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ............................................................................ 2

STANDARD OF REVIEW ................................................................................................ 9

ARGUMENT ............................................................................................................... 11

      A.      Whomever is the "automated teller machine operator" of the ATM
             is the proper defendant. ......................................................................... 12

      B.      MetaBank is neither the "automated teller machine operator" of the
             ATM nor does it impose a fee on the ATM's users. ................................. 14

             1.      MetaBank is not the "automated teller machine operator" of
                    the ATM. ................................................................................. 14

             2.      MetaBank is not the "automated teller machine operator"
                    that imposes a fee on the users of the ATM. ............................. 18

CONCLUSION ............................................................................................................. 19

CERTIFICATE OF SERVICE .......................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Asoze v. Washington Mutual Bank,*
    588 F. Supp. 2d 366 (E.D.N.Y. 2008) ...................................................................... 13, 19

*Binder v. Bristol-Myers Squibb Co.,*
    184 F. Supp. 2d 762 (N.D. Ill. 2001) ...................................................................... 10, 11

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ............................................................................................................ 9

*City of Waukegan v. National Gypsum Co.,*
    560 F. Supp. 2d 636 (N.D. Ill. 2008) ............................................................................ 15

*Dallis v. Don Cunningham & Associates,*
    No. 91 C 2203, 1991 WL 278312 (N.D. Ill. Dec. 18, 1991) ......................................... 11

*Gingerich v. City of Elkhart Probation Dept.,*
    273 F.R.D. 532 (N.D. Ill. 2011) ............................................................................... 10, 11

*Keri v. Bd. of Trustees of Purdue Univ.,*
    458 F.3d 620 (7th Cir. 2006) ........................................................................................... 9

*Lippner v. Deutsche Bank Nat'l Trust Co.,*
    544 F. Supp. 2d 695 (N.D. Ill. 2008) ...................................................................... 10, 11

*Lozano v. Twentieth Century Fox Film Corp.,*
    702 F. Supp. 2d 999 (N.D. Ill. 2010) ............................................................................ 14

*McCabe v. Crawford & Co.,*
    210 F.R.D. 631 (N.D. Ill. 2002) ............................................................................... 14, 15

*Morrissey v. Webster Bank, N.A.,*
    417 F. Supp. 2d 183 (D. Mass. 2006) ........................................................................... 13

*Neff v. Am. Dairy Queen Corp.,*
    58 F.3d 1063 (5th Cir. 1995) ......................................................................................... 15

*Newriver, Inc. v. Mobular Technologies, Inc.,*
    478 F. Supp. 2d 158 (D. Mass. 2007) ........................................................................... 15

*Rivera v. Network Health Plan of Wisconsin, Inc.,*
    No. 02-C-1055, 2003 WL 22794439 (E.D. Wis. July 11, 2003) ................................... 11

*Simenson v. Hoffman, M.D.*,
    No. 95-C-1401, 1995 WL 631804 (N.D. Ill. Oct. 24, 1995) ........................................ 15

*Springer v. Durflinger*,
    518 F.3d 479 (7th Cir. 2008) ........................................................................................ 9

*Tipton v. Northrup Grumman Corp.*,
    242 Fed. Appx. 187 (5th Cir. 2007) .............................................................................. 11

*United States v. Bestfoods*,
    524 U.S. 51 (1998) .................................................................................................. 14, 15

*Wheeler v. Lawson*,
    539 F.3d 629 (7th Cir. 2008) ................................................................................... 9, 10

## Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 19
Fed. R. Civ. P. 56(c) ................................................................................................... 1, 9
Fed. R. Civ. P. 56(e) ..................................................................................................... 10

L.R. 56.1(a) ................................................................................................................ 1, 9
L.R. 56.1(b) ................................................................................................................... 10

## Statutes

12 C.F.R. § 205.16 ......................................................................................................... 12
12 C.F.R. § 205.16(a) ................................................................................... 1, 11, 13, 14
12 C.F.R. § 205.16(b) .................................................................................................... 12
12 C.F.R. § 205.16(c) ............................................................................................... 13, 19
12 C.F.R. § 205.16(c)(1) ............................................................................................ 1, 12
12 C.F.R. § 205.16(c)(2) ................................................................................................ 12

15 U.S.C. § 1693b .......................................................................................................... 12
15 U.S.C. § 1693b(d)(3)(A) ............................................................................... 12, 13, 19
15 U.S.C. § 1693b(d)(3)(B) ..................................................................................... 13, 18
15 U.S.C. § 1693b(d)(3)(B)(i) ................................................................................... 1, 12
15 U.S.C. § 1693b(d)(3)(B)(ii) ..................................................................................... 12
15 U.S.C. § 1693b(d)(3)D)(i) .......................................................................... 1, 11, 13
15 U.S.C. § 1693b(d)(3)(D)(i)(II) ................................................................................ 14

## Other

American Heritage Dictionary (3d ed. 1992) ........................................................................... 15

Webster's New International Dictionary (2d ed. 1958) ............................................................ 15

Webster's New Collegiate Dictionary (1977) .......................................................................... 18

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WALLACE STILZ, III, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:11-cv-05631 |
| META FINANCIAL GROUP, INC., | ) ) | |
| Defendant. | ) ) | Judge Ruben Castillo |

**DEFENDANT META FINANCIAL GROUP, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Defendant Meta Financial Group, Inc. (hereinafter, "MetaBank")[1] submits this Memorandum of Law in support of its contemporaneously-filed Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and Local Rule 56.1(a).

## INTRODUCTION

MetaBank is entitled to summary judgment because there are no genuine issues of fact material to the EFTA claim against MetaBank. The claim fails as a matter of law based upon undisputed facts. Plaintiff cannot carry his burden of proof to establish that MetaBank is the "automated teller machine operator," as that term is defined in 15 U.S.C. § 1693b(d)(3)(D)(i) and 12 C.F.R. § 205.16(a), of the ATM. Only the "automated teller machine operator" of the ATM at issue is subject to statutory damages for any violation of the fee-notice disclosures set forth in 15 U.S.C. § 1693b(d)(3)(B)(i) and 12 C.F.R. § 205.16(c)(1). Nor can Plaintiff carry his burden

---

[1] MetaBank is a part of the holding company, Meta Financial Group, Inc. Meta Payment Systems is a division of MetaBank. Meta Financial Group, Inc., MetaBank, and Meta Payment Systems are referred to collectively herein as "MetaBank."

of proof to establish that MetaBank imposes the surcharge fee he alleges the ATM charged. Because it is undisputed that MetaBank is neither the "automated teller machine operator" nor the "automated teller machine operator" that imposed the fee at the ATM at issue, MetaBank is entitled to judgment dismissing it as a matter of law.

MetaBank files contemporaneously herewith a Memorandum of Law, a Statement of Undisputed Material Facts, and the Declarations of Kendall Harsch, LeRoy Huntimer, Neil Clark, Jim Weber, Gabriel Penaso, and Biren Patel in support of its Motion.

## STATEMENT OF UNDISPUTED FACTS

The ATM electronic funds transfer industry (the "Industry") in which MetaBank operates requires contractual and operational relationships between multiple Industry service providers in order for an ATM cardholder to complete an ATM transaction at an ATM. (MetaBank's Statement of Undisputed Facts ("SUF"), ¶ 1.) These Industry service providers are entities that may have access to cardholder data, solicit card brand activity, and/or perform certain sales and support service roles for the Industry. *Id.* Such service providers operate on the "issuing" or on the "acquiring" side of the Industry, and include issuing banks ("Issuing Banks"), national electronic fund transfer ("EFT") networks ("Networks"), independent sales organizations ("ISOs"), independent sales representatives ("ISRs"), transaction payment processors ("Processors"), third party vault cash loaders (*e.g.*, Brinks), third-party service providers (*e.g.*, ATM repair technicians), and ATM operators. *Id.*

Networks, which are often commonly known by their "card brands," *e.g.*, Visa, MasterCard, Plus, Cirrus, NYCE, CU24, Star, etc., require that each ISO and its participating ATMs have a sponsoring bank ("Sponsor" or "Sponsor Bank"). (SUF, ¶ 2.) In order to be a sponsoring bank for an ATM, the Sponsor must be a "member" of a card brand(s) and ensure

proper registration of each ISO it chooses to sponsor as defined in the Networks' operating rules and regulations. *Id.* These operating rules and regulations require the Sponsor to perform certain due diligence activities on the ISO to ensure that each sponsored ISO is qualified to participate in ATM EFT activities. *Id.* Such due diligence includes, *e.g.*, validation of ownership of the ISO, valid business licenses, and insurance; evaluation of financial stability; and completion of appropriate background checks. *Id.* The operating rules and regulations further require the Sponsor to ensure that ISOs manage themselves in compliance with the operating rules and regulations. *Id.*

MetaBank is a Sponsor Bank. (SUF, ¶ 3.) One of the Industry ISOs sponsored by MetaBank is Payment Alliance International, Inc. ("PAI"), which is the ISO connected to the ATM located at 827 North Wilke Road, Arlington Heights, Illinois. *Id.* That ATM is owned and operated by BSP Liquors Inc. (SUF, ¶ 4.) MetaBank sponsors PAI based on a flat monthly fee, pursuant to the sponsorship agreement between MetaBank and PAI. (SUF, ¶ 5.)

The roles of Networks, Sponsors, and service providers are illustrated by a typical ATM transaction as follows:

- To begin an ATM transaction, an ATM user (*i.e.*, a cardholder like Plaintiff Wallace Stilz, III) opens a depository account, *e.g.*, a checking, savings or other depository account, with a financial institution, which may be accessed by the financial institution's customer. (SUF, ¶ 6.) Upon opening the account, the customer's bank issues a "card," *e.g.*, a debit card, which the customer (who is a "cardholder") can use, *e.g.*, to withdraw funds from his bank account at one or more innumerable ATMs nationwide. *Id.* The cardholder's bank (known as an "Issuing Bank") is on the "issuing" side of the ATM transaction. *Id.*

- The cardholder can then use the debit card at ATMs (as Mr. Stilz allegedly did) because the cardholder's Issuing Bank has enrolled as a member of one or more of the national EFT Networks which are typically identified on the backside of the debit card. (SUF, ¶ 7.) As a member of those branded Networks, the Issuing Bank provides EFT services to the cardholder as well as the Issuing Bank's other customers. *Id.* The cardholder may use any ATM that is a member of one or more Networks in which the Issuing Bank has enrolled. *Id.* Networks, which were first developed at the advent of the credit card industry, have implemented operating rules and regulations to govern themselves as well as additional oversight from federal and state governmental authorities. *Id.*

- Suffice it to say that ATMs may be owned and operated by various persons and businesses. (SUF, ¶ 8.) Some are large companies. *Id.* Some are small businesses. Some are sole proprietorships with just a few ATMs. *Id.* Some are just aspects of a business, e.g., a gas station, convenience store, arcade or liquor store, which have other commercial activities. *Id.*

- Some ATMs are owned and operated by the cardholder's Issuing Bank. (SUF, ¶ 10.) Many more ATMs are owned and operated by other businesses, and are known as "foreign" ATMs by the Issuing Bank. *Id.*

- For the purposes of illustration, assume that a cardholder uses the debit card at an ATM that is owned and operated by a local liquor store to make a $50.00 withdrawal. (SUF, ¶ 11.) The cardholder inserts the debit card into the ATM, which reads the data on the back of the card. *Id.* The cardholder also enters a PIN into the ATM's encrypting pin pad. *Id.* The ATM then transmits the

data (*i.e.*, ATM's terminal ID; the cardholder's bank account number; amount of requested withdrawal, *e.g.*, $50.00; and the ATM's "surcharge fee," *e.g.*, $2.00) through a triple-data encryption system to the designated Processor for that ATM, which in turn transmits the data to a Network (chosen from one or more Networks of which the Processor and Issuing Bank are members) to the cardholder's Issuing Bank. *Id.* The liquor store and Processor are on the "acquiring" side of the ATM transaction. *Id.*

• The cardholder's Issuing Bank electronically verifies the cardholder's bank account balance and, if sufficient funds are available, *i.e.*, if the balance is at least $52.00, then the withdrawal approval authorization goes back to the liquor store's ATM via the same path in reverse order and the ATM dispenses $50.00 that the cardholder seeks to withdraw. (SUF, ¶ 12.) The $50.00 withdrawal is deducted from the cardholder's bank account, including the ATM's surcharge fee (*i.e.*, a total of $52.00 is deducted), and in many instances, an "interchange fee" (sometimes called a "foreign ATM fee") is charged by the Network and also deducted from the cardholder's bank account. *Id.* (Some Issuing Banks, as a courtesy to their customers, pay the interchange fees themselves or refund the fees to the cardholder.) *Id.*

• The cardholder removes the $50.00 dispensed by the liquor store's ATM. The cardholder also has paid the $2.00 surcharge fee and possibly an interchange fee. (SUF, ¶ 13.)

- Within 48 hours afterwards, the Processor deposits the $50.00 in dispensed funds back into the liquor store's bank account to replenish the ATM working funds, also known as vault cash. (SUF, ¶ 14.)

An ATM operator, like BSP Liquors Inc., links its ATM to Networks by enrolling with an ATM program of an ISO. (SUF, ¶ 15.) ISOs are on the "acquiring" side of the ATM transaction. *Id.* An ISO's internal sales staff or an ISR recruits ATM operators for enrollment in an ISO's ATM program. (SUF, ¶ 16.)

In this case, an ISR known as Total Payment Solutions, Inc. recruited BSP Liquors Inc. to enroll its ATM (that BSP Liquors Inc. owns and operates located at 827 North Wilke Road, Arlington Heights, Illinois, hereinafter the "ATM") into PAI's ATM program. (SUF, ¶ 17.) (PAI is an ISO sponsored by MetaBank.) (SUF, ¶ 18.) PAI enrolled BSP Liquors Inc. as its customer. (SUF, ¶ 19.) BSP Liquors Inc. entered into an "ATM Operator Agreement" with MetaBank and a subsidiary of PAI, pursuant to which PAI links BSP Liquors Inc. together with one of PAI's designated Processors, in this case a Processor known as FIS. (SUF, ¶ 20.) FIS connects BSP Liquors Inc.'s ATM to Networks, which provided the link between the ATM and Mr. Stilz's bank (which is an "Issuing Bank") for the ATM transaction at issue in this case. (SUF, ¶ 21.) FIS transmitted the EFT data that enabled the ATM owned and operated by BSP Liquors Inc. to verify Mr. Stilz's account balance and dispense funds to him, and enabled PAI and each Processor to credit/debit the dispensed funds, surcharge fees, and any interchange fees to the appropriate accounts, which data was transmitted via one of the Networks linked by PAI and FIS. (SUF, ¶ 22.)

The ATM Operator Agreement between MetaBank, BSP Liquors Inc., and a subsidiary of PAI identifies BSP Liquors Inc. as the ATM Operator. (SUF, ¶ 23.) The ATM Operator

Agreement includes an ACH authorization that allows PAI and the processor (FIS) to credit / debit BSP Liquors Inc.'s bank account to restore dispensed ATM funds and to allow for payment of BSP Liquor's surcharge income from ATM transactions.  (SUF, ¶ 24.)  Except for the ATM Operator Agreement, MetaBank does not have any direct contractual relationship with BSP Liquors Inc.  (SUF, ¶ 25.)

MetaBank does not own or operate BSP Liquors Inc.'s ATM.  (SUF, ¶ 27.)  BSP Liquors Inc. owns and operates its ATM.  (SUF, ¶ 4.)  MetaBank does not own or operate ATMs, other than ATMs at MetaBank's 12 retail branch locations in Iowa and South Dakota.  (SUF, ¶ 28.)

MetaBank is not responsible for or authorized to load cash into the ATM.  (SUF, ¶ 29.)  BSP Liquors Inc. is solely responsible and authorized to do so.  *Id.*  The vault cash is not MetaBank's money.  (SUF, ¶ 30.)  BSP Liquors Inc. loads the vault cash, which is the liquor store's money.  (SUF, ¶ 31.)

MetaBank does not impose any surcharge fee at the ATM.  (SUF, ¶ 32.)  BSP Liquors Inc. charges the surcharge fee at the ATM, and MetaBank does not.  (SUF, ¶ 33.)  Nor does MetaBank receive any surcharge fees from the ATM, set the amount of the ATM surcharge fee for transactions at the ATM or stock cash in the ATM.  (SUF, ¶¶ 30 – 31, 34 – 35.)  According to the express terms of the ATM Operator Agreement, the "ATM operator [is] [a]ny entity receiving revenue from ATM fees or stocking ATM cash."  That is BSP Liquors Inc., and not MetaBank.  (SUF, ¶ 36.)  BSP Liquors Inc. retains 100% of the surcharge fees imposed  by its ATM, which BSP Liquors Inc. earns for operating the ATM.  (SUF, ¶ 37.)  The surcharge fees are part of Red Roosters Liquors' gross revenue.  (SUF, ¶ 38.)

MetaBank does not set the amount of the ATM surcharge fee for transactions at BSP Liquors Inc.'s ATM.  (SUF, ¶ 35.)

The EFT data that enables BSP Liquors Inc.'s ATM to verify an ATM user's account balance and dispense funds to him or her, and enables PAI and the processor (FIS) to credit/debit the dispensed funds and surcharge fees to BSP Liquors Inc., does not pass through MetaBank. (SUF, ¶ 39.)  The surcharge fees do not pass through MetaBank.  (SUF, ¶ 40.)

MetaBank does not program data fields for BSP Liquors Inc.'s ATM, which control what information is printed on receipts and displayed on the screen. (SUF, ¶ 26.)  It does not have access to do so.  (Id.)

MetaBank does not repair or maintain the ATM.  (SUF, ¶ 41.)  BSP Liquors Inc. is solely responsible and authorized to repair and maintain the ATM, which it owns.  (SUF, ¶ 42.)  BSP Liquors Inc.'s expenses for operating its ATM include parts, supplies, and utilities to repair, maintain, and operate the ATM.  (SUF, ¶ 43.)

MetaBank does not provide utilities for BSP Liquors Inc.'s ATM.  (SUF, ¶ 44.)  BSP Liquors Inc. is solely responsible and authorized to provide utilities for the ATM, which BSP Liquors Inc. pays for itself.  (SUF, ¶ 45.)  The ATM's power cord is plugged into an electrical receptacle in BSP Liquors Inc.'s business, Red Rooster Liquors.  (SUF, ¶ 46.)

If the ATM is stolen or damaged, then loss is to BSP Liquors Inc. – not MetaBank. (SUF, ¶ 47.)  MetaBank does not have any insurable interest in the ATM.  (SUF, ¶ 48.)  BSP Liquors Inc. does.  *Id.*  BSP Liquors insures the ATM for loss and property damage.  (SUF, ¶ 49.)

MetaBank is not the custodian of transactional data on individualized transactions that occur at the ATM.  Such data is retained by Processors, Networks, and Issuing Banks.  (SUF, ¶ 50.)  Without requesting such data from other parties, MetaBank cannot identify individual

cardholders that utilize the ATM, the amounts withdrawn or dates and times of such transactions. (SUF, ¶ 51.)

MetaBank does not post, install, remove, alter, modify, inspect, verify or maintain fee decals on the ATM. (SUF, ¶ 52.) It would not do so. It is not the ATM operator. BSP Liquors Inc. is the ATM operator and may have installed, removed, altered and/or modified a fee decal on the ATM.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). In ruling on a motion for summary judgment, the Court must consider the facts in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all doubts in the non-moving party's favor. *See Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *See Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). Local Rule 56.1(a) specifically requires the moving party to file with its motion "a statement of material facts as to

which the moving party contends there is no genuine issue" supported by "specific references to affidavits, parts of the record, and other supporting materials." Once a moving party has met this burden, the non-moving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. The non-moving party must show that there is evidence upon which a jury reasonably could find for the plaintiff." *Wheeler*, 539 F. 3d at 634. Local Rule 56.1(b), therefore, requires the party opposing a motion for summary judgment to file a "concise response to the movant's statement along with specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the denial of the moving party's statement." *Lippner v. Deutsche Bank Nat'l Trust Co.*, 544 F. Supp. 2d 695, 699 (N.D. Ill. 2008) (Der-Yeghiayan, J.). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." L.R. 56.1(b).

The plaintiff bears the burden of establishing that he or she has sued the correct defendant. *See, e.g., Gingerich v. City of Elkhart Probation Dept.*, 273 F.R.D. 532, 537 (N.D. Ind. 2011) (Rodvich, J.) (denying motion to compel response to interrogatory which requested that defendant state whether it was proper defendant, as "the burden of identify the proper defendant is one the plaintiff carries); *Binder v. Bristol-Myers Squibb*, 184 F. Supp. 2d 762, 768 (N.D. Ill. 2001) (Denlow, J.) (holding that because party asserting "the affirmative of an issue has the burden of proving the facts essential to its claim," plaintiff "bears the burden of proving she has sued the correct defendant"). Thus, if the defendant's motion for summary judgment arguing that it is not the proper defendant is supported by reference to purportedly undisputed facts in affidavits or other parts of the record, then the burden shifts to the plaintiff to properly

contest those facts. *See Dallis v. Don Cunningham & Associates*, No. 91-C-2203, 1991 WL 278312, at \*4 (N.D. Ill. Dec. 18, 1991) (Kocoras, J.) (granting motion for summary judgment where plaintiff failed to present contrary evidence or contest fact in defendant's affidavit which showed that he did not perform acts sufficient to make him a "principal" subject to liability under the Illinois Sales Representative Act); *see also, e.g., Tipton v. Northrup Grumman Corp.*, 242 Fed. Appx. 187, 189-190 (5th Cir. 2007) (granting summary judgment because plaintiff failed to present evidence contesting facts in named defendant's declaration which established that named defendant was not plaintiff's "employer" and therefore not proper defendant to plaintiff's Americans with Disabilities Act claim); *Rivera v. Network Health Plan of Wisconsin, Inc.*, No. 02-C-1055, 2003 WL 22794439, at \*8 (E.D. Wis. July 11, 2003) (holding that to survive summary judgment, plaintiff would have to come forward with evidence demonstrating that named defendant was in fact the "Plan," and therefore the proper defendant to ERISA claim). If plaintiff fails to respond by coming forward with sufficient evidence to create a genuine dispute as to any of the facts supporting defendant's argument that it is not the proper defendant, then the court should grant the defendant's motion for summary judgment. *See Lippner*, 544 F. Supp. 2d at 699; *Dallis*, 1991 WL 278312, at \*4.

## ARGUMENT

Plaintiff alleges that MetaBank is an "automated teller machine operator," as that term is defined in 15 U.S.C. § 1693b(d)(3)(D)(i) and 12 C.F.R. § 205.16(a), of the ATM. Plaintiff has the burden of proof to establish that MetaBank is the "automated teller machine operator" as he alleges. It is part of Plaintiff's *prima facie* case. *See, e.g., Binder v. Bristol-Myers Squibb Co.*, 184 F. Supp. 2d 762, 768 (N.D. Ill. 2001) (St. Eve, J.) (plaintiff bears burden of establishing that she has sued correct defendant); *Gingerich v. City of Elkhart Probation Dept.*, 273 F.R.D. 532,

537 (N.D. Ind. 2011) (Rodovich, J.) ("[T]he burden of identifying the proper defendant is one the plaintiff carries.").  He cannot carry his burden based upon the undisputed facts.

**A.      Whomever is the "automated teller machine operator" of the ATM is the proper defendant.**

The EFTA and Regulation E require that each "*automated teller machine operator* that *imposes a fee*" make certain fee-notice disclosures to ATM users, *e.g.*, post a "fee decal" that the ATM charges a $2.00 surcharge fee.  *See* 15 U.S.C. 1693b(d)(3)(A) ("The regulations prescribed under paragraph (1) [regarding disclosures] shall require any *automated teller machine operator who imposes a fee* on any consumer for providing host transfer services to such consumer to provide notice … of (i) the fact that a fee is imposed by such operator for providing the service; and (ii) the amount of any such fee.]"); 12 C.F.R. § 205.16(b) ("An *automated teller machine operator that imposes a fee* on a consumer for initiating an electronic fund transfer or a balance inquiry shall: (1) Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and (2) Disclose the amount of the fee").  The EFTA and Regulation E further require that each "*automated teller machine operator* that *imposes a fee*" post such fee-notice disclosures "on the machine."  *See* 15 U.S.C. § 1693b(d)(3)(B)(i) & 12 C.F.R. § 205.16(c)(1).[2]

These sections of the EFTA and Regulation E – 15 U.S.C. 1693b and 12 C.F.R. § 205.16 – also define "automated teller machine operator."  Both definitions, however, are circular.  For example, the EFTA states, in pertinent part,

(i) Automated teller machine operator

The term "automated teller machine operator" means <u>any person who</u>—

---

[2] The EFTA and Regulation E also require fee-notice disclosures "on screen."  See 15 U.S.C. § 1693b(d)(3)(B)(ii) & 12 C.F.R. § 205.16(c)(2). The on-screen fee-notice disclosures are not at issue.  Plaintiff does not allege that the ATM operator did not provide the required on-screen fee-notice disclosures.

(I) operates an automated teller machine at which consumers initiate electronic fund transfers; and

(II) is not the financial institution that holds the account of such consumer from which the transfer is made.

15 U.S.C. § 1693b(d)(3)(D)(i) (emphasis added). Regulation E states, in pertinent part,

(a) Definition. Automated teller machine operator means any person that operates an automated teller machine at which a consumer initiates an electronic fund transfer or a balance inquiry and that does not hold the account to or from which the transfer is made, or about which an inquiry is made.

12 C.F.R. § 205.16(a) (emphasis added).

That is, the EFTA and Regulation E both define "automated teller machine operators" as those persons who "operate" ATMs. The ATMs are those at which ATM users conduct transactions – either to withdraw money or make balance inquiries. Importantly, the EFTA and Regulation E both require fee-notice disclosures by "automated teller machine operators" that impose fees upon a consumer for initiating an electronic fund transfer or a balance inquiry. *See* 15 U.S.C. 1693b(d)(3)(A) & 12 C.F.R. § 205.16(a). Thus, ATM operators under the EFTA and Regulation E are only those that impose fees. *See also Asoze v. Washington Mutual Bank*, 588 F. Supp. 2d 366, 373-74 (E.D.N.Y. 2008) (quoting *Morrissey v. Webster Bank, N.A.*, 417 F. Supp. 2d 183, 189 (D. Mass. 2006)) (requirement for fee-notice disclosures "only appl[y] to an ATM operator that imposes a fee."). "Automated teller machine operators" that do not impose fees are excluded from the fee-notice requirements of 15 U.S.C. § 1693b(d)(3)(B) and 12 C.F.R. § 205.16(c). *See id.* Such is common sense. In this case, it is not disputed that the ATM imposed a surcharge fee.

The EFTA and Regulation E do not further define what it means to "operate" an ATM, except that they exclude ATMs operated by financial institutions at which an ATM user has an account. *See* 15 U.S.C. § 1693b(d)(3)(D)(i)(II) & 12 C.F.R. § 205.16(a).[3]

**B.    MetaBank is neither the "automated teller machine operator" of the ATM nor does it impose a fee on the ATM's users.**

Neither Congress nor the Board of Governors of the Federal Reserve System has defined what it means to "operate" an "automated teller machine."  Nor have courts had an occasion to do so in EFTA jurisprudence.  Who is the ATM operator is seldom in dispute.  Nonetheless, who is the "operator" of the "automated teller machine" located at 827 North Wilke Road, Arlington Heights, Illinois (referred to as the "ATM") is at issue in this case.  Although the term "operator" is undefined in the EFTA and Regulation E, the Court should apply the ordinary and natural meaning of "operate" to conclude that MetaBank is not an "operator" of the "automated teller machine" at issue.

1.    <u>MetaBank is not the "automated teller machine operator" of the ATM</u>.

If a term is undefined, then the Court should apply its ordinary and natural meaning. "[R]eliance on dictionary definitions for an undefined statutory term is well-established. … The cardinal rule is that words used in statutes must be given their ordinary and plain meaning." *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1007 (N.D. Ill. 2010) (St. Eve, J.) (internal citations omitted).  If a statute's language is ordinary and plain, like "operate," then "the sole function of the courts is to enforce it according to its terms."  *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 641 (N.D. Ill. 2002)  (Castillo, J.).  "[A] court should assume that the legislative purpose is expressed by the ordinary meaning of the words used."  *Id.* (internal citations omitted); *see also United States v. Bestfoods*, 524 U.S. 51, 66, 118 S. Ct. 1876, 141 L.

---

[3] Disclosures of a financial institution's fees are not governed by the EFTA and Regulation E.

Ed. 2d 43 (1998) (applying "ordinary and natural meaning" of "operate" for purposes of deciding CERCLA liability because statute is not defined "operate"); *City of Waukegan v. National Gypsum Co.*, 560 F. Supp. 2d 636, 644 (N.D. Ill. 2008) (Kennelly, J.) (same); *Simenson v. Hoffman, M.D.*, No. 95-C-1401, 1995 WL 631804, at *4 (N.D. Ill. Oct. 24, 1995) (Hart, J.) (construing term "operates…within its ordinary and natural meaning" for purpose of liability under Americans with Disabilities Act since statute did not define "operates") (quoting *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, (5th Cir. 1995)); *see generally McCabe v. Crawford & Co.*, 210 F.R.D. 634, 641 (N.D. Ill. 2002) (Castillo, J.).

This Court can apply the plain and ordinary meaning of the term "operator." The United States Supreme Court did so in *United States v. Bestfoods*, in which statutory liability depended upon the term "operator," which was not defined in CERCLA. The United States Supreme Court provided the following "ordinary and natural meaning" of "operate":

> In a mechanical sense, to "operate" ordinarily means "[t]o control the functioning of; run: *operate a sewing machine.*" American Heritage Dictionary 1268 (3d ed. 1992); *see also* Webster's New International Dictionary 1707 (2d ed. 1958) ("to work; as, to *operate* a machine"). And in the organizational sense…the word ordinarily means "[t]o conduct the affairs of; manage: *operate a business.*" American Heritage Dictionary, *supra,* at 1268; see also Webster's New International Dictionary, *supra,* at 1707 ("to manage").

524 U.S. at 66 (emphasis in original); *see also Simenson*, 1995 WL 631804, at *4 ("operates" means "to put or keep in operation" or "control or direct the functioning of" or "to conduct the affairs of") (internal citations omitted); *see also Newriver, Inc. v Mobular Technologies, Inc.*, 478 F. Supp. 2d 158, 163 (D. Mass. 2007) (construing term "operator" in context of operating machine to mean "a person who performs a function with the use of a device or process"). The plain meaning of the term "operator" or "operate" thus denotes "control over the function of" an ATM or, understood in the organizational sense, "conducting the affairs of" or "managing" an ATM.

MetaBank exercises no such control over the function of the ATM nor does it manage or conduct the affairs of the ATM — that is solely the province of BSP Liquors Inc.

To begin, non-party BSP Liquors Inc. admits that it is the owner of the ATM, which is located within the liquor store it owns known as Red Rooster Liquors.  (SUF, ¶¶ 4,9.)  BSP Liquors Inc. further admits that it operates its ATM.  (SUF, ¶ 4.)  BSP Liquors Inc. bears all indicia of the ATM's "operator" within the plain and ordinary meaning of the term "operate." BSP Liquors Inc. controls the functions, monitors, maintains and manages its ATM in every respect.  BSP Liquors Inc. is responsible for and authorized to load the cash into its ATM, which it does with its own supply of vault cash.  (SUF, ¶ 29.)  The vault cash is its money.  (SUF, ¶ 30.) BSP Liquors Inc. sets the amount of its ATM's surcharge fee, charges the ATM fees, and retains 100% of them, which are part of BSP Liquors Inc.'s gross revenue.  (SUF, ¶¶ 33 – 35, 37.)  The ATM fees belong to BSP Liquors Inc.  (SUF, ¶ 37.)  In addition, BSP Liquors Inc. is solely responsible for, and bears the expense of, the repair, maintenance of the ATM.  (SUF, ¶ 42 – 43.) It pays for its ATM's parts, supplies, and utilities.  (SUF, ¶ 43.)  For example, BSP Liquors Inc.'s owner and President, Biren Patel, personally repairs the ATM's printer and replenishes its supply of paper receipts himself.  (SUF, ¶ 42.)  BSP Liquors Inc. insures the ATM for loss and property damage.  (SUF, ¶ 43.)  It has the singular insurable interest in the ATM.  (SUF, ¶ 48.) If the ATM is stolen or damaged, the loss is to BSP Liquors Inc.  (SUF, ¶ 47.)

MetaBank, unlike BSP Liquors Inc., does a not exercise control over the function of BSP Liquors Inc.'s ATM nor does it manage or conduct the affairs of BSP Liquors Inc.'s ATM. MetaBank does not bear any of the indicia of an "operator" of BSP Liquors Inc.'s ATM according to the ordinary and natural meaning of that term.  MetaBank does not own the ATM. (SUF, ¶ 27.)    It does not control the functions, monitor or manage BSP Liquors Inc.'s ATM in

any respect whatsoever. It does not repair or maintain BSP Liquors Inc.'s ATM. (SUF, ¶ 41.) It does not provide or pay for the ATM's parts, supplies or utilities. (SUF, ¶¶ 41 – 45.) It does not insure the ATM, because it does not have any insurable interest in the ATM. (SUF, ¶ 48.) It is not responsible for or authorized to load cash into the ATM. (SUF, ¶ 29.) The vault cash is not its money. (SUF, ¶ 30.) It does not set the amount of the ATM surcharge fee or charge them. (SUF, ¶¶ 33, 35.) It does not receive any portion of them. (SUF, ¶ 34.) The surcharge fees do not even pass through MetaBank. (SUF, ¶ 40.)

MetaBank is simply the "Sponsor Bank" for the ATM. (SUF, ¶ 3.) Networks require that each ISO and its participating ATMs have a sponsoring bank. (SUF, ¶ 2.) BSP Liquors Inc., like other ATM operators, links its ATM to Networks, *e.g.*, Visa, MasterCard, Plus, Cirrus, NYCE, CU24, and Star, by enrolling with an ISO's ATM program – PAI's ATM program. (SUF, ¶¶ 15, 17, 19.) PAI enrolled BSP Liquors Inc. as its customer. (SUF, ¶ 19.) BSP Liquors Inc. entered into an "ATM Operator Agreement" with MetaBank and a subsidiary of PAI, pursuant to which PAI links BSP Liquors Inc. together with FIS, which is one of PAI's designated transaction payment. (SUF, ¶ 20.) FIS connects BSP Liquors Inc.'s ATM to Networks, which provided the link between the ATM and Mr. Stilz's bank for the ATM transaction at issue in this case. (SUF, ¶ 21.) The ATM Operator Agreement identifies BSP Liquors Inc. as the ATM Operator. (SUF, ¶ 23.) The ATM Operator Agreement includes an ACH authorization that enables PAI and each Processor to credit / debit BSP Liquors Inc.'s bank account to restore dispensed ATM funds and to allow for payment of BSP Liquors Inc.'s surcharge income from ATM transactions. (SUF, ¶ 24.) Except for the ATM Operator Agreement, MetaBank does not have any direct contractual relationship with BSP Liquors Inc. (SUF, ¶ 25.) MetaBank is not a custodian of transactional data on individualized transactions

that occur at BSP Liquors Inc.'s ATM. Such data is retained by Processors, Networks, and the ATM users' individual banks, which issue their "cards," *e.g.*, debit cards. (SUF, ¶ 50.) The EFT data that enabled BSP Liquors Inc.'s ATM to verify Mr. Stilz's bank account balance and dispense funds to him, and enabled PAI and the processor (FIS) to credit/debit the dispensed funds and surcharge fees to BSP Liquors Inc., did not pass through MetaBank. (SUF, ¶ 39.) Such data does not pass through MetaBank. *Id.* The surcharge fees do not pass through MetaBank. (SUF, ¶ 40.)

For these reasons, there is no genuine dispute that MetaBank does not exercises control over the function of BSP Liquors Inc.'s ATM nor does it manage or conduct the affairs of BSP Liquors Inc.'s ATM. BSP Liquors, Inc., not MetaBank, "operates" the ATM. MetaBank does not post, install, remove, alter, modify, inspect, verify or maintain fee decals on ATMs, because it does not own or operate ATMs, other than ATMs at MetaBank's 12 retail branch locations in Iowa and South Dakota, which it does operate. (SUF, ¶¶ 28, 52.)

Accordingly, MetaBank is not the "automated teller machine operator" as defined under the EFTA and Regulation E.

  2. <u>MetaBank is not the "automated teller machine operator" that imposes a fee on users of the ATM</u>.

Even assuming *arguendo* that Plaintiff could demonstrate that MetaBank is "automated teller machine operator[,]" MetaBank does not impose fees charged by the ATM. (SUF, ¶ 32.) BSP Liquors Inc. charges the surcharge fees, and MetaBank does not.[4] (SUF, ¶ 33.) As such, MetaBank is neither an "automated teller machine operator who imposes a fee" under the EFTA nor an "automated teller machine operator that imposes a fee" under Regulation E. The EFTA's and Regulation E's fee-notice requirements of 15 U.S.C. § 1693b(d)(3)(B) and 12 C.F.R. §

---

[4] "Impose" means "to establish or apply as compulsory;" "to establish or make prevail by force." Its synonym is "levy" as in taxation. Webster's New Collegiate Dictionary (1977).

205.16(c) apply to "automated teller machine operators" that impose fees. *See* 15 U.S.C. 1693b(d)(3)(A) ("The regulations prescribed under paragraph (1) [regarding disclosures] shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice…"); 12 C.F.R. § 205.16(b) ("An automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall: (1) Provide notice …"); *see also Asoze*, 588 F. Supp. 2d at 373 (dismissing EFTA claim against defendant pursuant to Fed. R. Civ. P. 12(b)(6) because, even though defendant admitted to being the "ATM operator," another entity imposed the fee).

Accordingly, MetaBank is not the "automated teller machine operator who imposes a fee" as defined under the EFTA and Regulation E.

## CONCLUSION

There are no genuine issues of fact material to the EFTA claim against MetaBank, which, based upon undisputed facts, fails as a matter of law. Plaintiff cannot carry his burden of proof to establish that MetaBank is the "automated teller machine operator" as he alleges. MetaBank requests that this Court grant its Motion for Summary Judgment and dismiss the only claim against it.

Respectfully submitted,

s/Derek W. Edwards
Derek W. Edwards (TN BPR No. 012455)

WALLER LANSDEN DORTCH & DAVIS, LLP
Nashville City Center
511 Union Street, Suite 2700
Post Office Box 198966
Nashville, Tennessee  37219-8966
Telephone:      (615) 244-6380
Facsimile:      (615) 244-6804
Email:          derek.edwards@wallerlaw.com

Dean S. Rauchwerger, Esq.
Michael S. Errera, Esq.
Clausen Miller P.C.
10 South LaSalle Street
Suite 1600
Chicago, Illinois  60603
Telephone:      (312) 855-1010
Email:          drauchwerger@clausen.com
                merrera@clausen.com

*Attorneys for Meta Financial Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Jennifer Kunze, Esq.
The Miller Law Group
15 Spinning Wheel Road
Hinsdale, Illinois  60521
Telephone:     (630) 654-4847
Email:             jennifer@themillerlawgroup.org

Kristen Ashley Parks, Esq.
Law Offices of Jeffrey S. Sobek, P.C.
22 W. Washington Street
Suite 1500
Chicago, Illinois  60622
Phone:             (312) 756-1330
E-mail:            kaparks@jsslawoffices.com

s/Derek W. Edwards
Derek W. Edwards (TN BPR No. 012455)

WALLER LANSDEN DORTCH & DAVIS, LLP
Nashville City Center
511 Union Street, Suite 2700
Post Office Box 198966
Nashville, Tennessee  37219-8966
Telephone:     (615) 244-6380
Facsimile:      (615) 244-6804
Email:            derek.edwards@wallerlaw.com

Dean S. Rauchwerger, Esq.
Michael S. Errera, Esq.
Clausen Miller P.C.
10 South LaSalle Street
Suite 1600
Chicago, Illinois  60603
Telephone:     (312) 855-1010
Email:            drauchwerger@clausen.com
                      merrera@clausen.com

*Attorneys for Meta Financial Group, Inc.*

8426144.19

21